Gdalina NOVITSKY, Plaintiff–Appellant,

v.

AMERICAN CONSULTING ENGINEERS, L.L.C., Defendant–Appellee.

No. 99–1471.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1999.

Decided Oct. 26, 1999.

David B. Nemeroff, Lincolnwood, IL, Adam J. Piacente (argued), Chicago, IL, for plaintiff–appellant.

Barry L. Kroll (argued), Gregory J. Bird, Williams & Montgomery, Chicago, IL, for defendant–appellee.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Hired at the age of 56, Gdalina Novitsky worked for American Consulting Engineers for 23 months before being let go. She charged her former employer with age and religion discrimination and filed suit after the EEOC issued a right-to-sue letter. The district court granted summary judgment against Novitsky, ruling that the employer's stated reason—the award of a major contract to a rival firm and a consequent lack of business in the areas of Novitsky's expertise—could not be deemed a pretext for discrimination. 1999 U.S. Dist. LEXIS 1321 (N.D.Ill.1999). Novitsky does not contest this decision on appeal. Instead she contends that American Consulting Engineers should pay damages for failing to accommodate her religious beliefs. Another employee denied her request for time off on the tenth day of Tishri 5757, known as September 23, 1996, in the Gregorian calendar. That day was Yom Kippur, the most sacred of Jewish holy days. On this claim, too, Novitsky lost in the district court, for the charge Novitsky filed with the EEOC lacks any allegation of failure to accommodate.

When this suit began the stakes were clear: Novitsky wanted reinstatement and back pay. Abandonment of the wrongful-discharge claim contracted the available relief. Suppose Novitsky had refused to work on Yom Kippur and been docked a day's pay; then the potential damages would have been that day's pay (the benefit Novitsky would have received had her religious beliefs been accommodated). But Novitsky came to work on Yom Kippur and lost no pay or benefits. Had she been granted time off on Yom Kippur, her employer likely would have charged her with a vacation day anyway (or granted leave without pay), so perhaps all that was ever at issue was a substitution between a religious observance and a vacation day. She seeks damages for the emotional distress caused by working on a holy day. These cannot be very large—and in particular cannot exceed a day's pay—or Novitsky would not have worked on Yom Kippur. Let us suppose that American Consulting Engineers was legally required to permit Novitsky to take Yom Kippur as

a vacation day. Faced with a wrongful refusal, Novitsky had a legal obligation of her own: to mitigate her damages. She was required to work or not, whichever caused the lesser injury. Novitsky decided to work, from which it follows that her loss is less than a day's pay. (She does not supply any reason to think that refusing to appear would have made the firm more likely to fire her; if that were so, the calculation of maximum damages would be more complex. But American Consulting Engineers submits that unexcused absences do not lead to discharge, and Novitsky has not offered any concrete response.)

■ Although the damages could not exceed a day's pay, they could be less. How much less depends on the extent of psychic loss Novitsky suffered from behavior at variance with her religious beliefs. Could a civil court estimate, and award as damages, the value of a religious observance? The Supreme Court has held that judicial resolution of a property-ownership dispute within a religious sect by application of canon law would violate the First Amendment, see *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), even though the rival factions had agreed that their disputes would be resolved under canon law. The Court thought that even by entering into contracts that make canon law the rule of decision, a church could not require—and the Constitution does not permit—a civil court to use religious criteria in rendering judgment. Is it possible to resolve Novitsky's claim without resort to religious criteria, such as how observant Novitsky was? What if the employer contends that Novitsky could have mitigated her damages by converting to Christianity? Damages might be available if the parties could agree on a secular means of ascertaining injury, cf. *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), but Novitsky has not suggested a method. No decision of which we are aware has held that damages computed by the value of a lost religious observance are proper under Title VII of the Civil Rights Act of 1964. But we need not pursue this question, on which the parties' briefs are silent, because we agree with the district judge's conclusion that Novitsky is not entitled to litigate an accommodation claim in the first place.

Novitsky charged American Consulting Engineers with discharging her on the basis of age and religion, and with allowing other employees to make anti-Semitic remarks in the workplace. The charge does not mention Yom Kippur or hint at a theory of failure to accommodate her religious practices, a claim different in kind from the normal anti-discrimination principle, which requires the employer to *disregard* age, religion, and other personal characteristics such as race and sex. Compare 29 U.S.C. § 623(a)(1) and 42 U.S.C. § 2000e–2(a)(1) (prohibition of age and religion discrimination), with 42 U.S.C. § 2000e(j) (requiring the employer "to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."). Novitsky stresses that claims "reasonably related to the allegations of the charge and growing out of such allegations" (*Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir.1971), approved in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (en banc)) are part of a charge. But Novitsky wants us to treat all claims under Title VII against a single employer as related to one another, which would eviscerate the statutory charge requirement.

A charge of discrimination enables the EEOC to investigate the allegations and negotiate with the employer; Congress hoped that negotiation often would avoid the need for litigation. Accordingly we have stressed that the essential question is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Babrocky v. Jewel Food Co.*, 773

F.2d 857, 864 n. 2 (7th Cir.1985). A charge alleging discriminatory discharge and anti-Semitic comments at work would not naturally lead to an investigation into the employer's handling of requests to take time off for religious observance. Wrongful discharge and a hostile work environment (the burden of the "anti-Semitic comments" charge) are remote from a failure to accommodate. What is more, an accommodation claim would have been much easier to conciliate than was a claim of wrongful discharge: the accommodation claim involves a few hundred dollars, which many employers would settle just to avoid legal fees, while the discharge claim would be much more costly to resolve. American Consulting Engineers says that the denial of leave was based on a misunderstanding—that Novitsky asked the wrong person and would have been given the day off (as she had been the preceding year) had the request reached the supervisor in charge of such matters. This implies that there was room for compromise. By making a wrongful-discharge claim and withholding a claim about one day's work, Novitsky frustrated the conciliation process.

■ Attempting to avoid the limitations of the charge, Novitsky blames the EEOC. Her intake questionnaire mentions the Yom Kippur episode. The charge itself, drafted by an EEOC staffer who read the questionnaire, does not. Under the statute, however, it is the charge rather than the questionnaire that matters. 42 U.S.C. § 2000e–5(b). See *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir.1991). Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation. What is more, the charge is not the work of a faceless bureaucrat, leaving victims of discrimination helpless to protect themselves. Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it—as Novitsky did. If she had been dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition.

■ Novitsky's current argument—that she didn't pay much attention to what she was signing and shouldn't be held to its terms—has a familiar ring. People who sign insurance applications omitting vital information often blame the insurance agent; people who sign contracts containing clauses that in retrospect prove disadvantageous often say that they didn't read the fine print; people who sign tax returns omitting income or overstating deductions often blame their accountant or tax preparer. But these arguments never go anywhere. People are free to sign legal documents without reading them, but the documents are binding whether read or not. E.g., *Chicago Pacific Corp. v. Canada Life Assurance Co.*, 850 F.2d 334 (7th Cir.1988). Any other approach would undermine the validity of the written word and encourage people either to close their eyes (hoping that they can reap the benefits without incurring the costs and risks of the venture) or to come up with hard-to-refute tales of not reading or understanding the documents they sign. Ours is not a case in which the EEOC refused to accept a charge, or told someone that an intake questionnaire and a charge are the same thing. *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 80–81 (7th Cir.1992). Nor does Novitsky complain of deceit by the EEOC that would equitably toll the 300-day period to file a proper charge, a possibility *Early* raised. Novitsky, who knew that the charge was separate from the intake questionnaire, has not sought to file a new and enlarged charge but stands on the one on file.

Novitsky had an opportunity to read the charge and, if she wanted, to obtain professional advice on the subject. Novitsky was accompanied by a lawyer when she signed the charge, though the record does not reveal what role the lawyer played. But whether or not the complainant had a lawyer, whether or not she sought or lis-

tened to counsel, indeed, whether or not she read or understood the charge, it was *her* charge, and it did not put her former employer on notice of any claim related to Yom Kippur.

AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

I write separately only to clarify what is before the court in this case. We are presented today with a claimant who included one incident in the intake questionnaire that was not included in the charge drafted by the EEOC. The claimant's counsel was present when she reviewed and signed the charge, and neither she nor her counsel ever requested that the omitted information be included in the charge. On those facts, we have concluded that her signature on the charge binds her to its contents, and that we will not look beyond the charge.

The majority opinion contains some broad language which purports to limit the complainant to the language of the charge "whether or not the complainant had a lawyer ... indeed, whether or not she read or understood the charge...." Contrary to the opinion's implications, we do not now decide whether an illiterate person or *pro se* person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge. That issue is not before us and is in fact substantially different from the one we decide today. A number of courts have recognized that equitable considerations may require a court to look outside the formal charge where the employee has done all that she can to present the claim to the EEOC, particularly where the failure to include the allegations results from EEOC negligence or misinformation. *See, e.g., Sickinger v. Mega Systems, Inc.*, 951 F.Supp. 153 (N.D.Ind.1996); *Angotti v. Kenyon & Kenyon*, 929 F.Supp. 651 (S.D.N.Y.1996) and cases cited therein; *see*

*generally Steffen v. Meridian Life Ins.*, 859 F.2d 534 (7th Cir.1988); *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75 (7th Cir.1992). In fact, the opinion even recognizes a limited number of circumstances in which equitable considerations may affect the outcome, although its list of such circumstances is certainly not exhaustive. We simply do not address such equitable circumstances here. Any language in this opinion indicating how we would decide such a case, or what equitable circumstances not present here might justify relief, must be viewed as *dicta*.