**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FREDERICK MARTIN,

      Plaintiff-Appellant,

  v.

CENTRAL STATES EMBLEMS,
INC.,

      Defendant-Appellee.

No. 04-3417
(D.C. No. 03-CV-3363-JTM)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **HARTZ** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Frederick Martin, a black man, who is a prisoner at the Lansing, Kansas, Correctional Center, filed a pro se complaint in district court against his

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

former employer, defendant Central States Emblems, Inc. (CSE), a private corporation operating a business at the prison, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e through § 2000e-17, and 42 U.S.C. § 1981. [1] The district court granted CSE's motion to dismiss, concluding Mr. Martin lacked standing to bring a Title VII claim and failed to name the proper party for the § 1981 claim. We affirm, but for different reasons than those given by the district court. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." (quotations omitted)).

## I. Factual and Procedural Background

CSE entered into a Lease Agreement with the Kansas Department of Corrections to operate a manufacturing-related business from a building at the Lansing Correctional Center and to employ inmates at the business. The Agreement stated that CSE's operations could not unreasonably disrupt the normal routine and management of the prison. Also, the Agreement provided that the Department of Corrections would determine the number of inmates available

---

[1] Because Mr. Martin has proceeded pro se at all times, we liberally construe his court filings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

to CSE as employees. The Department of Corrections would screen inmate applicants and make those deemed eligible available for hiring. CSE had discretion to make job assignments and to terminate inmate employees. But the Department of Corrections retained authority to terminate an inmate's employment if necessary for security, custody, and class considerations. Any inmate refusing to report to work when CSE was working was subject to termination. The Department of Corrections provided correctional officers to supervise inmates employed by CSE.

If an employee failed to report for work or left work earlier than permitted, the Agreement required CSE to notify the Department of Corrections immediately. Also, CSE personnel were required to report violations of prison rules to the Department of Corrections, write appropriate disciplinary reports, and testify at proceedings if requested to do so. The Department of Corrections, however, retained the sole authority to discipline inmates for violations of the prison rules.

During his incarceration, Mr. Martin began working at CSE. At some point, he was required to work overtime. After working the overtime hours for a period of time, Mr. Martin asked to be "laid in" until regular hours were

restored. [2] CSE accepted that request, and its shop manager informed Mr. Martin "that he may not be able to call him back to work when the regular hours were restored," R., Vol. 1, Doc. 1 at 2. As required, CSE reported this development to the Department of Corrections. Prison officials initiated disciplinary proceedings against Mr. Martin and decided that his actions violated Kan. Admin. Reg. § 44-12-401(a), which precludes an inmate from interfering with, delaying, sabotaging, or disrupting work in progress. He received a reduced classification level for his refusal to work overtime, resulting in a loss of certain privileges.

Thereafter, Mr. Martin filed a complaint in district court alleging race discrimination by CSE in violation of Title VII and § 1981. He alleged two types of discrimination: (1) that he "was terminated because of his race and not for good cause in connection with his employment," and (2) that he "[wa]s being punished for conduct which did not give rise to similar sanctions when engaged in by [CSE's] non-Black employees." R., Vol. 1, Doc. 1 at 3. He asserted that a white employee, who asked to be "let go" after the regular hours had been restored, but because of the "long hours," was transferred to another job without being disciplined. *Id.* at 2.

---

[2]     Mr. Martin defines "laid in" as "not required to report to work, but not fired or quit." Aplt. Br. at 2.

After filing his complaint, Mr. Martin filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging race discrimination. The charge stated only that Mr. Martin "was subjected to disciplinary measures by [CSE] . . . for the same or similar alleged allegation that a similarly-situated Caucasian employee also committed, but the Caucasian employee was not similarly disciplined for his infraction." *Id.*, Doc. 12, Attach. 2. The charge did not indicate that CSE terminated Mr. Martin's employment. The EEOC issued Mr. Martin a notice of right-to-sue. *Id.*, Attach. 1. Mr. Martin asked that the district court supplement his complaint with the EEOC charge and notice of right-to-sue, which the court apparently did.[3]

---

[3] An employee may bring a Title VII claim in federal court after filing a timely EEOC charge and receiving and acting on a right-to-sue letter from the EEOC. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). However, "the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect." *Jones v. Am. State Bank*, 857 F.2d 494, 499 (8th Cir. 1988). "A Title VII complainant may file an action prior to receiving [a] right to sue letter, provided there is not evidence showing that the premature filing precluded the [EEOC] from performing its administrative duties or that the defendant was prejudiced by such filing." *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990). Here, there is no evidence that the EEOC was hampered or that CSE was prejudiced by the premature filing of the district court action. Thus, the right-to-sue letter cured the premature filing. *See Kane v. State of Iowa Dep't of Human Servs.*, 955 F. Supp. 1117, 1137 (N.D. Iowa 1997) (holding "no refiling or amendment of the complaint to state that the right-to-sue letter had been received was required; mere 'receipt' of the right-to-sue letter was sufficient to cure the defect").

After the EEOC proceedings had ended, CSE filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (6), alleging, among other things, that the court lacked subject matter jurisdiction over the Title VII claims because Mr. Martin never asserted that he was terminated in his discrimination charge and that Mr. Martin failed to state a claim upon which relief could be granted with respect to all other claims. CSE attached to its motion to dismiss a letter that Mr. Martin sent to the EEOC before the charge was filed. R., Vol. 1, Doc. 14, Ex. E. In that letter, Mr. Martin clarified that he was disciplined for work performance because he objected to working overtime and that he asked to be "laid in" because he did not want to work overtime. He also revealed that the white worker complained about the long hours and his health problems and requested a job transfer after regular working hours had been restored. Mr. Martin admitted that he did not know of any other inmates who had complained about the forced overtime and admitted that he did not want, and therefore did not request, another job. Also attached to the motion to dismiss was a letter from the EEOC to Mr. Martin that was sent with the notice of right-to-sue. *Id.*, Ex. F. This letter indicated that an investigation would not be continued due to insufficient evidence; the EEOC was unable to corroborate that Mr. Martin was disciplined due to race and Mr. Martin's and the white employee's situations were dissimilar or not comparable.

Mr. Martin responded to the motion to dismiss, admitting that he had not wanted to be transferred to another job at the time he was "laid in," and arguing that he did assert a termination claim before the EEOC. To support his response, he attached documents which he "incorporate[d] by reference . . . into the pleadings of his complaint." *Id.*, Doc. 17 at 1. One attachment was his EEOC intake questionaire indicating that both his termination and discipline were racially discriminatory. *Id.* at Ex. 7.

The district court granted CSE's motion to dismiss, concluding that (1) Mr. Martin lacked standing to sue for race discrimination under Title VII because his status was that of an inmate and not an employee, citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (affirming dismissal for failure to state claim and concluding plaintiff could not pursue discrimination claim under Title VII, because he was not employee as his relationship with prison official defendants arose out of his status as inmate, not as employee), and (2) he had sued the wrong party with respect to his § 1981 claim. Thereafter, Mr. Martin filed a motion to alter or amend the judgment, which the district court denied. This appeal followed.

## II. Analysis

### A. Dismissal

Mr. Martin argues the district court erred in granting CSE's motion to dismiss, because CSE and he had an employer-employee relationship and CSE terminated his employment, resulting in prison discipline. He contends that the termination and prison discipline were based on CSE's intentional racial discrimination.

#### 1. Termination

##### a. Title VII

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (quotation omitted). "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir. 1999). Thus, if Mr. Martin did not exhaust his administrative remedies, neither this court nor the district court had jurisdiction to consider his Title VII termination claim.

In addressing whether dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is appropriate, we may consider documents submitted by the parties to resolve any jurisdictional fact questions. *See Sizova v. Nat'l Institute of*

*Standards & Tech.*, 282 F.3d 1320, 1324-25 (10th Cir. 2002) (requiring conversion to motion for summary judgment under Fed. R. Civ. P. 56 only when jurisdictional question is intertwined with merits of case; recognizing that jurisdictional issue of exhaustion of Title VII administrative remedies is not aspect of substantive claim of discrimination). Comparison of Mr. Martin's district court complaint and his EEOC charge reveals that he did not exhaust administrative remedies on a termination claim. In his complaint, Mr. Martin specifically alleged that CSE terminated him on the basis of race, and that termination resulted in prison disciplinary proceedings. In contrast, in his EEOC charge, Mr. Martin alleged only that he was discriminated against by the prison discipline; he clearly did not allege termination due to race discrimination.

Mr. Martin, however, argued in his response to the motion to dismiss that he did assert discrimination based on termination before the EEOC. To support his argument, he attached the questionnaire he filed with the EEOC, in which he asserted that he had been terminated based on his race. R., Vol. 1, Doc. 17, Ex. 7 at 3.

The questionnaire itself, however, does not lead us to believe that it was a charge. On its face, it does not suggest that it was a charge. The preprinted privacy statement information on the questionnaire stated that typically the questionnaire would be considered a charge if it was the sole timely written

statement of allegations of employment discrimination. *Id.* at 4. Timeliness, however, is not at issue in this case where there was a timely filed formal charge. In addition, the privacy statement information indicated that the questionnaire was to be used "to provide such charge filing counseling as is appropriate." *Id.*

Furthermore, the EEOC did not treat the questionnaire as a formal charge. Rather, the EEOC sent Mr. Martin a copy of a draft charge of employment discrimination prepared by the EEOC along with a letter directing him to review the draft charge for correctness, to contact his intake officer before making any revisions, and to initial any changes. R., Vol. 1, Doc. 17, Ex. 5; *see also Edelman v. Lynchburg College*, 535 U.S. 106, 115 n.9 (2002) ("The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified."). The letter also directed Mr. Martin to sign the charge. R., Vol. 1, Doc. 17, Ex. 5. Mr. Martin signed the draft charge, but he did not make any changes despite the fact that the charge did not mention termination based on race. *Id.*, Doc. 12, Attach. 2. Recognizing a distinction between merely making allegations in the questionnaire and asserting formal charges, the EEOC issued Mr. Martin a right-to-sue letter only after he filed a formal charge.

Under the circumstances of this case, "it is the charge rather than the questionnaire that matters." *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d

699, 702 (7th Cir. 1999). Mr. Martin cannot supplement his formal charge with allegations in the questionnaire when he could have included those allegations in his charge. *See id.*

Thus, the questionnaire alone was not sufficient to exhaust administrative remedies in light of the later filed and more limited formal charge. We conclude this claim was appropriately dismissed for lack of subject matter jurisdiction–on the ground that Mr. Martin did not exhaust his administrative remedies. *See Jones*, 91 F.3d at 1401.

### b. § 1981

Unlike Title VII claims, § 1981 claims can be commenced without exhaustion of administrative remedies. *See Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 274 (10th Cir. 1975), *overruled on other grounds by Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983). The legal sufficiency of Mr. Martin's § 1981 complaint allegations is a question of law. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted). "We accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those

facts in the light most favorable to the nonmoving party." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quotation omitted). "Dismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief.'" *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1244 (10th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In deciding a Rule 12(b)(6) motion, a federal court typically may only consider facts alleged in the complaint. *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). There are exceptions to this rule; these exceptions will not convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. First, a court may review the arguments in a memorandum in opposition to a motion to dismiss. *County of Santa Fe*, 311 F.3d at 1035. Second, a court may review documents referred to in a complaint if the document is central to the plaintiff's claim and the parties do not dispute the authenticity of the documents. *Id.* With respect to the second exception, we consider the documents from the EEOC proceedings as undisputed documents referenced in the complaint as amended and central to Mr. Martin's claim without requiring that this case be decided on a summary judgment motion rather than a motion to dismiss. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd*, 276 F.3d 579 (3d Cir. Oct. 22, 2001) (unpublished).

Section 1981 [4] prohibits "discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Federal courts evaluate the merits of a § 1981 claim under the allocation burdens set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). To establish a prima facie case of termination on the basis of race, a plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the job and was performing the job satisfactorily; and (3) he was terminated under circumstances giving rise to an inference of discrimination. *Id*.

Although Mr. Martin meets the first two requirements, he does not meet the third. The circumstances here do not give rise to an inference of discrimination. Unlike the white employee, he did not mention health problems [5] or request to be transferred to another job. Also dissimilar is the fact that Mr. Martin requested to be "laid in" while overtime hours were in effect, but the white employee made his request to be "let go" after regular hours had resumed. Under the circumstances,

---

[4] Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

[5] Although Mr. Martin stated in his complaint that he worked in a small, unventilated room using harsh chemicals, he did not argue that he left his employment due to health reasons until his response to the motion to dismiss. This belated assertion is conclusory.

-13-

we conclude Mr. Martin's complaint fails to state a claim for which relief may be granted under § 1981 for racial discrimination in termination.

## 2. Prison Discipline

### a. Title VII

Title VII prohibits an employer from discriminating based on race in the terms and conditions of employment. *See* 42 U.S.C. § 2000e-2(a)(1). Thus, for a Title VII action, there must be an adverse employment practice, *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004), which necessarily requires conduct by an employer, *see Williams*, 926 F.2d at 997 ("Title VII protections apply only where there is some connection with an employment relationship.") (quotation omitted). Mr. Martin does not argue that CSE had the authority to discipline him or actually did discipline him. Indeed, nothing in the record indicates that CSE disciplined Mr. Martin. Under the Agreement, the institutional discipline was at the behest of the State, not CSE, [6] and the discipline was imposed

---

[6] Mr. Martin implicitly referred to this Agreement in his complaint. *See* R., Vol. 1, Doc. 1 at 2 (noting CSE "operates a prison based private industry production plant at the Lansing facility"). CSE attached a copy of this Agreement to the motion to dismiss. *Id.*, Doc. 14, Ex. B, Ex. 1. In his response to the motion to dismiss, Mr. Martin "[did] not deny that [CSE] entered into a Lease Agreement with the Lansing Correctional Facility." *Id.*, Doc. 17 at 1. Because the Agreement was implicitly referred to in the complaint and the parties do not dispute its authenticity, we may consider it in deciding this appeal. *See Mishler v. Clift*, 191 F.3d 998, 1008 n.7 (9th Cir. 1999) (deciding that where complaint did not specifically refer to document or discuss its contents, and district court

(continued...)

-14-

due to Mr. Martin's violation of a prison rule and his status as a prisoner, not as an employee. CSE had no authority to discipline Mr. Martin, and did not attempt to do so. CSE merely reported Mr. Martin's request to be "laid in" to the State, as it was required to do. Under these circumstances, we therefore conclude that Mr. Martin failed to state a claim under Title VII for which relief may be granted.

### b. § 1981

Just as the prison discipline was not an adverse-employment action by CSE as is required for a Title VII claim, the prison discipline was not contract-related action by CSE as is required for a § 1981 claim. Accordingly, for the reasons discussed above, we conclude Mr. Martin failed to state a claim upon which relief may be granted under § 1981.

### B. Motion to Alter or Amend Judgment

Mr. Martin argues the district court erred in denying his motion to alter or amend judgment, which the court treated as filed under both Fed. R. Civ. P. 59(e) and 60(b). He asserted before the district court, and continues to assert on appeal, that the district court improperly applied *Williams*, because his association with

---

[6](...continued)
implicitly accepted document as part of pleadings, appellate court could consider document when deciding whether complaint failed to state claim); *see also County of Santa Fe,* 311 F.3d at 1035 (setting forth exception to general rule that district court only considers facts alleged in complaint when addressing motion to dismiss).

CSE was due to his employment, not his incarceration. *See Williams*, 926 F.2d at 997 (holding that plaintiff could not pursue discrimination claim, because he was not an employee, since his relationship with defendant prison officials arose out of his status as inmate, not as employee). Even assuming that the district court misapplied *Williams*, in light of our holding that dismissal was warranted on other legal grounds, we conclude the district court did not abuse its discretion in denying Mr. Martin's motion. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000) (reviewing denial of Rule 60(b) motion for abuse of discretion); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (reviewing denial of Rule 59(e) motion for abuse of discretion).

## C. Appointment of Counsel

Finally, Mr. Martin argues that the district court erred in denying his motion for appointment of counsel, because counsel could have clarified his claims. The district court denied appointment of counsel, because there was little likelihood Mr. Martin would prevail on the merits even with counsel, the facts and issues in the case are not complicated, Mr. Martin failed to show special circumstances preventing him from presenting his claims, and he failed to present compelling evidence that he was diligent in seeking counsel. We conclude the denial of appointment of counsel was not an abuse of discretion. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

-16-

The judgment of the district court is AFFIRMED.  The mandate shall issue forthwith.

Entered for the Court

Michael W. McConnell
Circuit Judge

-17-