In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3082

LORD OSUNFARIAN XODUS,

*Plaintiff-Appellant,*

*v.*

WACKENHUT CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-01431—**Donald E. Walter**, *Judge.*

ARGUED APRIL 15, 2010—DECIDED AUGUST 27, 2010

Before BAUER, ROVNER and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge*. Lord Osunfarian Xodus appeals the district court's judgment that Wackenhut did not engage in religious discrimination when it refused to hire him on account of his dreadlocked hairstyle. Specifically, Xodus disputes the court's conclusion that he never brought his religious beliefs to Wackenhut's attention. We affirm.

## I. BACKGROUND

A dreadlock is a "ropelike strand of hair formed by matting or braiding." Merriam Webster's Collegiate Dictionary 352 (10th ed. 1986). Rastafarians believe dreadlocks symbolize a bond with God, citing this passage in the Bible: "[N]o razor shall come upon his head; . . . and he shall let the locks of hair of his head grow long." Numbers 6:5 (Revised Standard Version). Xodus, a Rastafarian and Hebrew Israelite adherent, sued Wackenhut, claiming it violated Title VII when it did not hire him as a security guard because he would not cut his dreadlocks.

A few days before Xodus interviewed for a job with Wackenhut, Securitas, another security firm, fired him because he refused to cut his hair to comply with the company's grooming policy. On July 7, 2004, the morning of his Wackenhut interview, Xodus was refused a security position at Allied Security because he told them he would not cut his dreadlocks. Then he went to Wackenhut where he interviewed with manager Clarence McCuller.

Before trial, the district court denied Wackenhut's motion for summary judgment on liability, holding that a genuine issue of fact existed as to whether Xodus informed McCuller of his religious beliefs. But the court granted the company's motion for summary judgment on damages, holding that Xodus failed to mitigate his damages by exercising reasonable diligence to find alternative employment, and that he failed to support his request for punitive damages by establishing that Wackenhut acted recklessly or with malice.

During his two-day bench trial, Xodus had to prove that he had a religious practice that conflicted with one of Wackenhut's employment requirements, that he brought his religious practice to the company's attention, and that was the basis for Wackenhut's refusal to hire. The parties agreed with Judge Donald Walter of the Western District of Louisiana, sitting by designation, that the only fact at issue in the case was whether Xodus actually brought to McCuller's attention that his religious beliefs precluded him from cutting his dreadlocks.

Xodus and McCuller testified differently about whether religion was discussed during the interview. According to Xodus, McCuller first told him about Wackenhut and the position for which they were hiring, its pay and benefits. McCuller then asked Xodus about his prior work history, state certification, name change, role at Securitas and the reason he was fired. Xodus testified that he told McCuller Securitas fired him because he wore dreadlocks and refused to cut them because of his religion. McCuller told him that Wackenhut had a similar grooming policy and that he would have to cut his hair to gain employment. McCuller said he could hire him to work security in a shipping warehouse, but that none of those positions were available at that time. According to Xodus, McCuller told him that Wackenhut could not offer him a job at that time, shook his hand, and walked him to the door.

McCuller testified that he noticed Xodus' dreadlocks as soon as the two met and he immediately initiated the discussion of Wackenhut's grooming policy. According

to McCuller, he told Xodus he would not be hired unless he cut his hair. Xodus then got up, began to walk out of the room and said, "That's why I'm suing Securitas . . . its against my belief." McCuller testified that he was not aware of the Rastafarian religion and did not equate Xodus' use of the word "belief" with religion. He said he told Xodus as he left that he could always reapply if he "took out his braids."

In addition to the witness testimony, Xodus introduced a copy of an email McCuller sent to his boss, Robert Krol, in December 2004, briefly describing the interview. McCuller told Krol that he had immediately informed Xodus about Wackenhut's grooming policy, and when Xodus said he would not cut his hair, McCuller says he told Xodus he could not offer him employment but that he was welcome to reapply if he took out the braids. Xodus also placed into evidence a memo Krol wrote to his superiors at Wackenhut summarizing his investigation into the incident. The memo says Xodus told McCuller that cutting his hair was "against my belief" and then got up and left the office.

Wackenhut also introduced EEOC charges Xodus signed and filed against Wackenhut and four other security firms, in an attempt to impeach his testimony. While four of the charges say that Xodus brought his religious belief to the interviewer's attention, only the Wackenhut charge does not. The judge then pro-hibited Xodus from testifying that he had *told* the EEOC worker who typed the charge that he brought his religion to McCuller's attention but the worker, and not

Xodus, had actually typed the charge document and omitted the statement. The court also excluded the EEOC worker's notes, citing *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999), as prohibiting discussion at trial of anything outside the EEOC charge. Though Xodus' counsel, by questioning his client about the EEOC visit, seemed to be trying to use the notes as a prior consistent statement, he never formally offered them as such and made no offer of proof in response to the judge's ruling.

At the end of the trial, the court found in favor of Wackenhut, finding that Xodus failed to bring his religious belief to its attention during the interview. The opinion recounted the testimony and other evidence and indicated that, faced with the two contradicting stories, the judge found McCuller more credible than Xodus; he found McCuller's testimony internally consistent and corroborated by both the email and the memo. In light of the fact that his dreadlocks cost him two security positions that week, the judge did not believe Xodus' testimony that the interview ended amicably and that he did not get up and walk out of the interview. The court cited the EEOC charges as additional corroboration for McCuller's version of events.

Xodus timely appealed.

## II. DISCUSSION

We first address Xodus' challenge to the finding that Wackenhut was not aware of his religion. Because

this aspect of the court's decision is a factual finding, we review it for clear error, with a great deal of deference to the trial judge's opportunity to judge the witnesses' credibility. Fed. R. Civ. P. 52(a). *See also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). We will overturn the decision only if we "are left with a definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *United States v. Mendoza*, 457 F.3d 726, 729 (7th Cir. 2006). As long as the court's finding represents a plausible view of the evidence at trial, it cannot be clearly erroneous. *See Mendoza*, 457 F.3d at 729.

In part to enable appellate review of these findings, Rule 52(a) of the Federal Rules of Civil Procedure requires the district court to "find the facts specially and state its conclusions of law separately." And while it need not address each piece of evidence, the court must include sufficient subsidiary facts so that we can clearly understand the steps by which it reached its ultimate conclusion. *See Freeland v. Enodis Corp*, 540 F.3d 721, 732 (7th Cir. 2008) (citing *Andre v. Bendix Corp.*, 774 F.2d 786, 801 (7th Cir. 1985)).

Xodus claims that his use of the word "belief" and the dreadlocks themselves sufficed to notify McCuller of the religious nature of his hairstyle. But unlike race or sex, a person's religion is not always readily apparent. *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003). "Even if he wears a religious symbol, such as a cross or a yarmulka, this may not pinpoint his particular beliefs

and observances; and anyway employers are not charged with detailed knowledge of the beliefs and observances associated with particular sects." *Id*. An employee has a duty to give fair notice of religious practices that might interfere with his employment. *Id*.; *Redmond v. GAF Corp.*, 574 F.2d 897, 902 (7th Cir. 1978). On the other hand, an employer cannot "shield itself from liability by . . . intentionally remaining in the dark." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005).

McCuller testified that he was not familiar with the Rastafarian faith and did not associate Xodus' statement of "belief" with religion. The district court concluded that McCuller did not know that Xodus wore his dreadlocks for religious reasons, and that finding is not clearly erroneous. Nor does the fact that Xodus' name begins with the word "Lord" persuade us that McCuller knew the dreadlocks were religious.

This case boils down to whether or not Xodus expressly brought his religious belief to McCuller's attention. The court concluded that Xodus failed to do so because he found McCuller's testimony about the interview more credible. And "when a trial judge's finding is based on his decision to credit the testimony of one of two . . . facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *See Anderson*, 470 U.S. at 575.

The court's decision to credit McCuller's testimony that Xodus never informed him that religious belief required him to wear dreadlocks is both plausible from

the evidence and sufficiently explained in the opinion. While Xodus argues that McCuller's testimony was in "clear conflict" with McCuller's email and Krol's memo regarding the interview, both documents in fact corroborate McCuller's trial testimony. Xodus places significance on McCuller's testimony that he told Xodus he could reapply for the position, claiming that it is unreasonable to believe that McCuller actually made such a statement if the interview ended abruptly. We fail to see the inconsistency; the statement might have been McCuller's effort to be polite when the interview ended. The offer actually substantiates the finding that McCuller was unaware that Xodus wore dreadlocks as a religious observance.

That the court's credibility determination rested on the above subsidiary facts is clear from the opinion. Though brief, the court's explanation provides sufficient detail to comply with Rule 52(a). *See Bendix*, 774 F.2d at 201. It detailed both Xodus' and McCuller's testimony, high-lighted the inconsistencies and explained which points the court found significant. The opinion explains that Xodus' testimony about the events of the interview was not credible in light of its duration, and that Xodus' claim that the interview came to a normal conclusion rather than abruptly was "contrary to normal human conduct" given his prior testimony about his two en-counters that week. The opinion contrasts this with McCuller's testimony and explains that McCuller's December 2004 email and Wackenhut's internal memo boosted McCuller's credibility. In light of the require-

ment that the court need only provide an adequate statement of reasons, we find the explanation sufficient.

Xodus argues on appeal that the district court erred by preventing him from testifying about his EEOC intake questionnaire, in which he says he informed McCuller of his religious beliefs, as evidence of prior consistent statements to bolster his credibility. The case upon which the district court relied, *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699 (7th Cir. 1999), rejected an attempt to use an intake questionnaire to expand the *legal scope* of EEOC charges. *See id*. at 702; *id*. at 703 (Rovner, J., concurring). The case does not prevent all *evidentiary* uses of EEOC questionnaires for other purposes, such as prior consistent statements when the plaintiff's credibility is disputed. We find no reversible error here, however, because the issue was not preserved in the district court. We have reviewed the trial transcript carefully and have not found a clear offer of the evidence as a prior consistent statement, nor a clear offer of proof needed to preserve the arguable error. *See* Fed. R. Evid. 103(a)(2). In addition, we are satisfied that even if there was an error, it would have been harmless in light of the district court's larger explanation of its credibility finding.

Finally, Xodus claims the district court erred when it granted summary judgment to Wackenhut on the issue of whether Xodus mitigated his damages and whether he was entitled to punitive damages. Because we affirm the district court's finding that Wackenhut did not discriminate, both these issues are moot.

### III.  CONCLUSION

The district court's conclusion that Wackenhut did not discriminate against Xodus was not implausible based on the evidence. We AFFIRM.