NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 15, 2011
Decided August 3, 2011

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 10-3829 | Appeal from the United States District Court for the |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 CR 370-3 |
| KING PERKINS, *Defendant-Appellant*. | David H. Coar, *Judge*. |

**O R D E R**

King Perkins pleaded guilty to conspiracy to possess and distribute heroin and cocaine, 21 U.S.C. §§ 846, 841(a)(1), and use of a communication facility in connection with a felony narcotics offense, *id.* § 843(b). The district court attributed 3.2 kilograms of heroin to Perkins, calculated a guidelines range of 135 to 168 months' imprisonment, and sentenced Perkins to a total of 135 months. On appeal Perkins argues that the court should have used a more conservative estimate of the drug quantity. We affirm the judgment.

After Perkins pleaded guilty, a probation officer prepared a presentence report, adopting the government's version of the offense. The government represented that Perkins had distributed 500 grams of cocaine and at least 4 kilograms of heroin over the course of the conspiracy. Based on this drug estimate, the probation officer set a base offense level of

34. *See* U.S.S.G § 2D1.1(c)(3). Perkins objected to that calculation. In a sentencing memorandum, defense counsel asserted that Perkins had never dealt cocaine and was responsible for less than 3 kilograms of heroin. Counsel's drug estimate would have yielded a base offense level of 32 and reduced the low end of the imprisonment range from 135 to 120 months (the statutory minimum). *See* 21 U.S.C. 841(b)(1)(A)(i); U.S.S.G. §§ 2D1.1(c)(4), Ch. 5 pt. A.

At sentencing Terris Williams, a coconspirator who already had pleaded guilty, testified for the government that from April until early October 2008 he fronted 100 to 200 grams of heroin to Perkins once or twice a week. After the beginning of October, Williams continued, he occasionally fronted heroin to Perkins, but the deliveries were less regular because Perkins was receiving heroin from others. Williams also said that on one occasion he supplied Perkins with 500 grams of cocaine.

Perkins did not testify or introduce any evidence. Instead, defense counsel argued that a wiretap on Williams's phone during September through November 2008 had not captured enough conversations between Williams and Perkins to corroborate Williams's testimony about the volume of his dealings with Perkins. The prosecutor responded that the wiretap had caught only the tail end of the conspiracy when Williams was less involved in delivering heroin to Perkins. That contention was not entirely accurate since Williams had testified that his dealings with Perkins did not diminish until sometime in October. But the prosecutor also argued that the small number of telephone calls between Williams and Perkins was not inconsistent with Williams's testimony about the volume of transactions because according to the prosecutor, drug traffickers are familiar with electronic surveillance and thus trafficking tends to be clandestine. Relying on Williams's testimony, the prosecutor argued that twice-weekly deliveries of 100 grams over 24 weeks (roughly mid-April to mid-October) would total 4.8 kilograms of heroin, a comfortable margin over the 3 kilograms needed to reach a level 34. This drug quantity excluded heroin that Perkins had received from others as well as the 500 grams of cocaine from Williams. The prosecutor added that even 16 weeks at 200 grams per week would yield 3.2 kilograms.

The district court observed that Williams's testimony didn't need to be corroborated, but after characterizing that testimony as reliable, the court decided to exclude heroin transactions from the months of September through November 2008. The court reasoned that Williams had been less certain about those months than he was about the period from April through August. (In fact, Williams was less certain about October and November, but not September.) The district court credited his testimony about the earlier months and, adopting the prosecutor's count of 16 weeks, attributed 3.2 kilograms of heroin to Perkins based on transactions totaling 200 grams per week.

On appeal Perkins argues that the district court's heroin quantity of 3.2 kilograms is clearly erroneous. He maintains that the court did not adequately explain its calculation and argues that this perceived shortcoming is problematic because 3.2 kilograms is "extremely close" to the 3-kilogram cutoff for a lower base offense level. He insists that the court should have been more conservative in estimating the amount of heroin because Williams, the only person to testify about the drug quantity, was a drug addict and was cooperating with the government.

We review drug-quantity findings for clear error. *United States v. Barnes*, 602 F.3d 790, 794 (7th Cir. 2010). A district court is entitled to estimate drug quantity from testimony about the frequency of dealing and the amount dealt over a specified period of time. *United States v. Hernandez*, 544 F.3d 743, 746 (7th Cir. 2008). Drug-quantity findings at sentencing must be supported by reliable evidence, but when a sentencing challenge is based on a credibility decision, our review is "especially deferential to the district judge's assessment of the testimony." *United States v. Etchin*, 614 F.3d 726, 738 (7th Cir. 2010). There is no requirement to corroborate witness testimony about drug quantity, *id.* at 739, and a judge is free to credit testimony from an admitted liar, a convicted felon, a paid informant, or a self-interested coconspirator, *United States v. Isom*, 635 F.3d 904, 907-08 (7th Cir. 2011).

It is obvious that the district court arrived at 3.2 kilograms by following the government's lead and estimating that Williams had fronted 100 grams of heroin to Perkins twice a week for 16 weeks. The court made its finding immediately after asking the prosecutor how she had calculated the drug quantity. The prosecutor had asserted that if the judge excluded the cocaine and the heroin transactions during September through November, there still was evidence of weekly deliveries totaling 200 grams for 16 weeks, or 3.2 kilograms. The court then explained that it was giving Perkins the benefit of the doubt and excluding transactions in September, October, and November, and found Perkins responsible for 3.2 kilograms of heroin.

Perkins argues that the district court should have been more conservative because 3.2 kilograms is close to the 3-kilogram cutoff for a lower base offense level, but the court's quantity calculation was close to the cutoff only *because* the court already had adopted a conservative estimate. Not only was Perkins given a pass on the heroin he received from others, as well as the cocaine and all of his transactions with Williams near the tail end of the conspiracy, but he also benefitted from the prosecutor's misstatement about the duration of his regular transactions with Williams. The government's estimate of 3.2 kilograms was based on the months of April through August of 2008. The prosecutor gave no reason for counting this period as 16 weeks when actually there are almost 22 weeks between the beginning of April and the end of August. Moreover, although Williams testified that he regularly fronted heroin to Perkins at least until the beginning of

October, the prosecutor did not include September in her quantity estimate, excluding another four weeks of regular deliveries from Williams.

Perkins contends for the first time on appeal that the court should have based its drug-quantity determination on deliveries of just 100 grams weekly, not 200, because Williams had said he delivered 100 to 200 grams of heroin to Perkins "once or twice a week." He maintains (apparently) that the court was required to use the low end of this estimate. But our task on appeal is to determine whether there is evidence in the record to support the sentencing court's finding, not whether there is a view of the evidence that might undercut it. *See United States v. Cruz-Rea*, 626 F.3d 929, 938 (7th Cir. 2010). A court does not automatically commit clear error by failing to use the most conservative calculation possible as long as the drug-quantity finding is supported by reliable evidence, *United States v. Longstreet*, 567 F.3d 911, 929 (7th Cir. 2009); *United States v. Krasinski*, 545 F.3d 546, 553 (7th Cir. 2008); *United States v. Blount*, 291 F.3d 201, 214-15 (2d Cir. 2002), and a judge's determination about what testimony is reliable is virtually never clear error, *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 687 (7th Cir. 2010); *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003). Moreover, Perkins did not testify, and he presented no evidence rebutting Williams's testimony or demonstrating that he distributed less than 3 kilograms of heroin. Without evidence that the district court relied on inaccurate information, there is no basis to find that the court's quantity determination was clearly erroneous. *See United States v. Sainz-Preciado*, 566 F.3d 708, 713 (7th Cir. 2009); *United States v. Hankton*, 432 F.3d 779, 792-93 (7th Cir. 2005).

AFFIRMED.