In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2681

ROBERT F. CAVOTO,

*Plaintiff-Appellant,*

*v.*

MARY LOU HAYES,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 6957—**David H. Coar,** *Judge.*

SUBMITTED FEBRUARY 16, 2011[*]—DECIDED FEBRUARY 28, 2011

Before BAUER, ROVNER and SYKES, *Circuit Judges.*

PER CURIAM. Mary Lou Hayes sent the Internal Revenue Service a Form 1099-C declaring that she had discharged an unpaid $30,000 debt owed to her by her former son-in-law, Robert Cavoto. He disputed that

[*] After examining the briefs and records, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and records. *See* FED. R. APP. P. 34(a)(2).

there ever was a debt and sued under 26 U.S.C. § 7434(a), claiming that Hayes had willfully filed a fraudulent "information return." Hayes counterclaimed for payment of the debt. After a bench trial, the district court held that the Form 1099-C was not fraudulent and that Hayes was entitled to her $30,000. *See Cavoto v. Hayes*, No. 08 C 6957, 2010 WL 2679973, at *4-*5 (N.D. Ill. July 1, 2010). Cavoto appeals and challenges both verdicts in favor of Hayes. We conclude that his complaint fails to state a claim and should have been dismissed without a trial, but we uphold the verdict for Hayes on her counterclaim and thus affirm the judgment of the district court.

Cavoto and his then-wife, Susan, were in financial trouble. To help them out, Hayes allowed the Cavotos to rack up over $30,000 on her American Express credit card. The Cavotos then separated and eventually divorced. After the separation, Cavoto e-mailed Hayes, told her that he anticipated receiving more than $30,000 from receivables due his recruitment and consulting firm, and said he would use those funds to repay her. Payment never came. Hayes cancelled the credit card, paid the balance due, and tried to recoup her $30,000 from Robert.

These attempts were unsuccessful. Hayes's other daughter, a certified public accountant, advised her to take a nonbusiness bad-debt deduction, *see* 26 U.S.C. § 166(a), and file a Form 1099-C with the IRS reporting that she had discharged the $30,000 debt, *see id.* § 6050P. Under the Internal Revenue Code, financial entities that discharge indebtedness of $600 or more must file a Form 1099-C, a type of "information return" which identifies the

amount of the debt and the person whose debt has been discharged. *Id.* §§ 6050P(a), 6050P(c), 6724(d)(1)(B)(ix); Treas. Reg. § 1.6050P-1(a)(4). A debtor who receives a discharge must report the amount as income. 26 U.S.C. § 61(a)(12); *Colonial Sav. Ass'n & Subsidiaries v. Comm'r*, 854 F.2d 1001, 1004 (7th Cir. 1988). Thus, a Form 1099-C allows the IRS to compare the amount of discharged debt claimed by a lending institution with the amount of income reported by the person whose debt was discharged. *Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 9 (D.D.C. 2006). Hayes followed her daughter's advice and filed a Form 1099-C in 2007. On her 2006 federal income tax return she also claimed a nonbusiness bad-debt deduction.

The Form 1099-C prompted the IRS to send Cavoto notice that he might be liable for $11,000 in additional taxes, interest, and penalties for 2006. He filed an objection with the IRS and then, two months later, sued Hayes under § 7434. That statute creates a private right of action against anyone who "willfully files a fraudulent information return with respect to payments purported to be made" to the plaintiff. *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 (6th Cir. 2007). After Cavoto filed suit, though, the IRS notified him that it would not pursue collection of any additional income or penalties. Yet Cavoto pressed on with the litigation to recover his outlay for attorney's fees and other expenses. He argued that, because only financial entities and not individuals are required to file a Form 1099-C, *see* 26 U.S.C. § 6050P(c), Hayes must have acted with fraudulent intent because her only possible motive was to cause him to incur additional taxable income. He

also asserted that Hayes's filing was nevertheless fraudulent because he did not owe her anything. Hayes counterclaimed for the amount of the debt, claiming breach of a loan contract.

The district court rejected Cavoto's contention that a Form 1099-C filed by someone other than a financial entity is necessarily fraudulent. Although Hayes was not required to file a Form 1099-C, the court explained, she was not prohibited from doing so. Moreover, the court added, filing a Form 1099-C is not equivalent to filing a false return, so long as the information in the form is accurate. *Cavoto v. Hayes*, No. 08 C 6957, 2009 WL 3380664, at *3-*4 (N.D. Ill. Oct. 19, 2009). The district court then conducted a bench trial to resolve the competing claims.

At trial the district court heard testimony from Hayes, Cavoto, and his ex-wife. The district court found that Cavoto had agreed with Hayes that she would loan him the $30,000 and in return he would repay the entire sum. *Cavoto*, 2010 WL 2679973, at *5. Because Cavoto agreed to reimburse Hayes, according to the court, she had a good-faith belief that when she filed the Form 1099-C she was cancelling a bona fide debt, and this meant that the Form 1099-C was not fraudulent. *Id.* at *4. The district court also found that Hayes had shown Cavoto had breached the contract by failing to repay her, and thus found for her on this claim as well. *Id.* at *5.

Although the parties had counsel in the district court, they are both pro se in this court. On appeal, Cavoto takes issue with the district court's decision that he was on the hook for the full $30,000, and he thus implies that

the Form 1099-C was indeed fraudulent. But, as it turns out, whether or not the Form 1099-C was misleading is irrelevant. The remedy created by § 7434 is limited in scope. The types of false "information returns" for which an injured taxpayer may recover are limited to the nine listed in 26 U.S.C. § 6724(d)(1)(A). *See* 26 U.S.C. § 7434(f); 34 AM. JUR. 2D *Federal Taxation* ¶ 71735 (2010); 20A FEDERAL PROCEDURE, LAWYERS EDITION § 48:1492 n.1 (2009). Those nine do not include returns relating to the cancellation of indebtedness, i.e., a Form 1099-C. This limitation was overlooked by the district court, which should have dismissed Cavoto's lawsuit outright under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Cavoto also attacks the district court's decision on the breach-of-contract claim, arguing that the district court misjudged Hayes's credibility. We upset a factfinder's credibility determination only for clear error. *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 686 (7th Cir. 2010); *Kanter v. Comm'r*, 590 F.3d 410, 417 (7th Cir. 2009). We do not second-guess a district court's resolution of conflicting evidence or credibility determinations. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985); *RK Co. v. See*, 622 F.3d 846, 852 (7th Cir. 2010). Here, Cavoto inappropriately slings insults at the district judge and Hayes in his brief, but otherwise points to no reason why the court should have credited his version over Hayes's.

Last, he asks that we reverse and remand because, he says, his lawyer was ineffective. This argument is frivolous. A retrial is not a proper remedy for deficient

representation in a civil action. *See Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001); *Hutcherson v. Smith*, 908 F.2d 243, 245 (7th Cir. 1990).

AFFIRMED.