In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3687

PETER COTTS,

*Plaintiff-Appellant,*

*v.*

SETH OSAFO, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 CV 1150—**Harold A. Baker**, *Judge.*

ARGUED SEPTEMBER 9, 2011—DECIDED AUGUST 10, 2012

Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Peter Cotts maintains that
prison officials were deliberately indifferent to the com-
plications from his painful hernia. Both parties agreed
that the jury should receive instructions based on our
pattern jury instructions for deliberate indifference
claims. Yet the instructions the jury received, over objec-
tions from both sides, suggested that "cruel and unusual

punishment" was an independent element of liability above and beyond a showing that the defendants were deliberately indifferent to Cotts's serious medical need. They also incorrectly suggested that damages were an element of liability. The misleading instructions prejudiced Cotts, and so we remand for a new trial.

## I. BACKGROUND

Peter Cotts was injured in November 2004 while incarcerated at the Illinois River Correctional Facility. He went to the prison's health care unit and complained of intense pain in the area of his right groin. Dr. Seth Osafo diagnosed Cotts with an inguinal hernia in his lower right abdomen, two inches in diameter, that was pushing into his groin. Over the next five months, Cotts visited Illinois River's health care unit sixteen times to seek help for his painful hernia, and he told the health professionals that the pain was interfering with his ability to walk, sleep, and use the restroom. He did not receive the surgery he requested. Instead, the health care providers treated his hernia by "reducing" it, that is, by manually shoving it back into Cotts's abdomen. Cotts testified that this procedure was very painful and that often, when he returned to a seated position, the hernia would pop right back out. Nonetheless, Cotts said, Dr. Osafo told him that no matter how much he complained of the pain from his hernia, Dr. Osafo would not allow him to be considered a candidate for surgical repair because the hernia was reducible.

After his release on parole on May 20, 2005, Cotts went to the county hospital in Chicago to seek help for his hernia. During a November 2005 appointment, a doctor scheduled a surgery date for May 12, 2006. Several months after the appointment, in early 2006, Cotts was admitted to the emergency room with "unbearable" hernia pain. He later visited a doctor at a clinic who offered to perform the surgery if Cotts could pay for it, but Cotts could not. On May 9, 2006, Cotts was arrested for violating his parole. He was sent back to prison three days before his surgery was to take place.

When he returned to prison, Cotts was first housed at Stateville Correctional Center. A doctor examined him at that facility's health care unit on May 19, 2006. Cotts testified that the doctor told him his hernia looked "very bad" and necessitated surgery, and that the doctor said he would make that note in Cotts's medical records for the benefit of the medical provider at the facility where Cotts would be housed. At this point, Cotts's hernia was the size of a grapefruit in his groin and a small grapefruit in his right scrotum. Four days later, Cotts was transferred to Shawnee Correctional Center, where he was taken to the health care unit immediately after he was processed. He returned repeatedly to that facility's health care unit over the next eight months but was told he could not have surgery because the hernia was reducible. Finally, on February 9, 2007, Cotts was allowed to see a general surgeon, who repaired his hernia three days later.

Cotts filed this lawsuit pursuant to 42 U.S.C. § 1983. He alleged that doctors including Dr. Osafo, as well as

Wexford Health Sources, Inc., a private company that provided the health care services at the prisons where Cotts was housed, were deliberately indifferent to a serious medical need by failing to provide prompt and adequate treatment for his hernia. The district court denied the defendants' motion for summary judgment, and the case proceeded to trial. There, the parties disputed the reason that the defendants denied Cotts's surgery requests. Cotts maintained that they did so because Wexford's policy on hernias did not allow surgery for "reducible" hernias, regardless of pain level, and because Wexford would have been responsible for paying for the surgery. He introduced Wexford's guideline for the treatment of an abdominal wall inguinal hernia: "Patients with stable abdominal wall hernias are not, in general, candidates for [hernia repair surgery] and will be monitored and treated with appropriate non-surgical therapy." The defendants' position was that Cotts's hernia did not necessitate surgery. Two doctors testified that Wexford's clinical guidelines were educational tools and not direct orders.

The parties agreed to use instructions modeled after the Seventh Circuit's pattern jury instructions for deliberate indifference claims. Despite that agreement, and over the objection of both parties, the district court refused several of the parties' jointly proposed instructions and instead gave its own. The jury returned a verdict finding the defendants not liable, and Cotts appeals.

**II. ANALYSIS**

Cotts maintains that the jury instructions given in his trial were incorrect and confusing, and that they may well have led the jury to rule against him. A district court has discretion when deciding which instructions to give a jury. *Alcala v. Emhart Indus., Inc.*, 495 F.3d 360, 363 (7th Cir. 2007). But the instructions it gives must fairly and accurately state the governing law. *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). To determine whether they are fair and accurate, we look at the instructions as a whole and conduct a de novo review. *Id.* Instructions that misstate or insufficiently state the law warrant a new trial when the instructions prejudice the losing party. *Cruz v. Safford*, 579 F.3d 840, 843 (7th Cir. 2009).

A.  Elements Instruction

Cotts takes issue with several of the instructions the jury received, but his principal challenge is to the "elements instruction" that told the jury what Cotts needed to prove to succeed on his claim. Cotts's first contention is that the elements instruction given to the jury over both sides' objection erroneously added "cruel and unusual punishment" as an element of liability.

The constitutional source of a deliberate indifference claim is the Eighth Amendment's ban on cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). That said, the Supreme Court has long made clear that proving deliberate indifference to a serious medical

need itself establishes an Eighth Amendment violation. *See id.* (stating deliberate indifference to a prisoner's serious medical need constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994). No separate showing of cruel and unusual punishment is or may be required, and the jurors here did not need to know the underlying basis of the claim to decide the case. *See, e.g., Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (stating elements of a deliberate indifference claim with no reference to "cruel and unusual punishment").

Indeed, neither party wanted the words "cruel and unusual punishment" included in the instructions. Both sides objected to their inclusion. And the Seventh Circuit pattern jury instruction does not include those words. Pattern civil jury instruction 7.12 states, without any reference to "cruel and unusual punishment":

> To succeed on his claim of failure to provide medical attention, Plaintiff must prove each of the following things by a preponderance of the evidence:
>
>     1.  Plaintiff had a serious medical need;
>
>     2.  Defendant was deliberately indifferent to Plaintiff's serious medical need;
>
>     3.  Defendant's conduct caused harm to Plaintiff.
>
> . . . .

The court rejected the parties' agreement to use an instruction based on the pattern instruction. Instead, the jury was instructed:

> The plaintiff has the burden of proving each of the following propositions to recover on his claim against a defendant regarding a violation of the plaintiff's Eighth Amendment right to freedom from cruel and unusual punishment. . .

> Second, that in so acting the defendant violated the plaintiff's right to be free from cruel and unusual punishment. Specifically, the plaintiff must prove that: (a) he had a serious medical need; and (b) that the defendant under consideration was deliberately indifferent to that need.

The instruction is puzzling. No mention of "cruel and unusual punishment" was necessary or wanted by the parties, yet the instruction told the jury Cotts needed to prove the defendants violated his "right to be free from cruel and unusual punishment." What follows is also unclear. The defendants contend that the "specifics" are simply an explanation of cruel and unusual punishment. But a reasonable juror might read the instruction as directing that Cotts needed to make an independent showing of cruel and unusual punishment in addition to the two "specifics." Stating "specifically the plaintiff must prove" two propositions is not the same as stating that cruel and unusual punishment "means" proving the two propositions that follow it. The use of "specifically" suggests that what follows is not an explanation of what "cruel and unusual punishment" means; instead, it looks like something else.

Sometimes other jury instructions can explain with sufficient clarity any ambiguity in a challenged instruction. *Francis v. Franklin*, 471 U.S. 307, 318-19 (1985). Here, another instruction elaborated on the deliberate indifference claim's source in the Eighth Amendment and the Amendment's "cruel and unusual punishment" language, but as in *Franklin*, this other, more general instruction did not "dissipate the error in the challenged . . . instruction." *See id.* at 320.

Indeed, the inclusion, and repeated inclusion, of "cruel and unusual punishment" in the instructions only had the potential to confuse the jury. Even if an instruction were perfectly clear that "cruel and unusual punishment" is not an independent element of a plaintiff's deliberate indifference claim, there is good reason that the phrase should not appear in the jury instructions. To a lawyer, "cruel and punishment" is a term of art found in the Constitution's Eighth Amendment. But to a lay person, the words "cruel and unusual punishment" can evoke a parade of horribles. Stoning, a breaking wheel, boiling to death, impalement, waterboarding, the death penalty—who knows what thoughts come to mind when hearing the words "cruel and unusual punishment"? A jury might think that the conduct needed to approach those levels. And it is particularly dangerous to inject the concept of "cruel and unusual punishment" into a case about deliberate indifference because a juror might think that to prevail the plaintiff needs to show that the defendants affirmatively "punished" him. The defendants here did not "punish" Cotts in the lay sense of that term. The conten-

tion in this case, as it is in many similar cases, is that the defendants were deliberately indifferent to Cotts's medical needs—but not as a penalty for something Cotts had done. To inject the idea of "punishment" into a deliberate indifference case like this one only makes the instructions more confusing for the jury. *Cf. Miller v. Neathery*, 52 F.3d 634, 638 (7th Cir. 1995) (stating court should define "'enigmatic terms' that leave the jury to speculate on their meaning").

We agree with Cotts that the instruction suggests Cotts needed to make an independent showing of cruel and unusual punishment (which is wrong under the law, as proving deliberate indifference to a serious medical need is enough), and that it is not clear that he only needed to prove a serious medical need about which the defendants were deliberately indifferent. Now certainly a judge is not precluded from giving the jury instructions which differ from those proposed by the parties or reflected in the pattern instructions. *See, e.g., Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009). Judges have a duty to ensure they are accurately instructing jurors in the law. *Alcala*, 495 F.3d at 366. But when a judge varies from the pattern instructions, he should do so to make things clearer for the jury, not more confusing. Here, unfortunately, the instruction did not clearly state the law to a lay person.

Cotts also maintains that the elements instruction wrongly required him to prove he "suffered damage" to show liability. (The written instructions that each juror received stated "suffered damage"; orally, the judge said "suffered damages.") Cotts objected to this phrasing,

arguing that the law required him to show "harm" but not "damage" to make the defendants liable. As with "cruel and unusual punishment," neither party wanted "damage" in the elements instruction. Seventh Circuit pattern instruction 7.12, to which the parties agreed, states that to find the defendants liable, the plaintiff must prove the defendants "caused harm" to the plaintiff.

Damages are not an element of liability in a deliberate indifference claim. *See Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (noting our approval of the award of nominal damages for Eighth Amendment violations when prisoners could not establish actual compensable harm); *see also Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1996) (requiring a plaintiff to prove "actual injury" when it is not an element of the claim was not harmless error). And in a civil trial, the liability determination comes first, and only if a jury finds liability should it consider damages. *See, e.g., Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 312 (7th Cir. 2009) (stating that a verdict form "should not ask a jury to assess damages before liability"). The two inquiries are distinct, with the liability inquiry the threshold one.

On appeal, the defendants maintain that any difference between "harm" and "damage" is minimal and that no prejudice resulted from the use of "damage" in the elements instruction. But the use of "damage(s)" in the instructions as a whole is confusing and renders its meaning in the critical elements instruction unclear. The elements instruction stated that Cotts had "the burden of proving each of the following proposi-

tions," one of which was "that the plaintiff suffered damage." The instruction then told the jury:

> [I]f you find from your consideration of all the evidence that the plaintiff has failed to prove any of these propositions, then your verdict should be for the defendant under consideration and against the plaintiff.

So the elements instruction made "damage(s)" a prerequisite for a liability determination. Then other instructions used "damage(s)" to at times mean something different than a component of liability. Another instruction, for example, told the jury (our emphasis added):

> If you decide the plaintiff is entitled to *damages*, you must fix the amount of money which will reasonably and fairly compensate the plaintiff for the following element of *damage* proved by the evidence to have resulted from the conduct of the defendant(s), taking into consideration the nature, extent, and duration of any injury:

> The pain and suffering endured by the plaintiff.

> Whether this element of *damage* has been proved by the evidence is for you to determine.

> If you find in favor of plaintiff, but find that the plaintiff has failed to prove compensatory *damages*, you must return a verdict for Plaintiff in the amount of one dollar ($1.00).

> If you decide for the defendants on the question of liability, you will have no occasion to consider the question of *damages*.

The use of the same word—"damage(s)"—in both the elements instruction and this one, to mean different things, renders its meaning in the elements instruction unclear. And the way it is used here only adds to the confusion. The first sentence here, directing the jury that if it finds "the plaintiff is entitled to damages" it must determine the amount of money "for the following element of damage" is difficult for even a lawyer to understand. (Pattern civil jury instruction 7.23, in contrast, states: "If you find in favor of Plaintiff, then you must determine the amount of money that will fairly compensate Plaintiff for any injury that you find he sustained as a direct result of . . . .").

Reading this instruction in conjunction with the elements instruction would likely leave a reasonable juror confused. The last sentence here, for example, does not make sense when read in conjunction with the elements instruction: although the last sentence here says the jury would have no occasion to consider the question of damages if it ruled for the defendants on liability, the liability elements instruction explicitly made part of the inquiry whether Cotts suffered damages. Like the use of "cruel and unusual punishment," the inclusion of the term of art "damage" in the elements instruction made the instruction more confusing, with the result that it did not clearly state the law for the jury.

The confusion in the instructions prejudiced Cotts. *See Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005) ("If an instruction is so misleading that an

appellant is prejudiced, reversal is required."). The erroneous instruction went to the elements of Cotts's claim. *See United States v. Perez*, 43 F.3d 1131, 1139 (7th Cir. 1994). The confusion was not clarified by other instructions. And this was not a slam-dunk victory for the defendants. A reasonable jury could have believed evidence suggesting that for almost three years, the defendants refused to repair Cotts's hernia surgically because they followed an inflexible policy against surgery for reducible hernias. They might also have believed that the fact that Wexford would have to pay for any surgery impacted the decision not to allow it. In short, a factfinder could have reasonably concluded that the defendants "substantially departed from professional judgment by refusing to authorize surgical repair for [Cotts's] painful hernia." *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). A new trial is necessary.

### B. Other Instructions

Because we are remanding for a new trial, we only briefly comment on Cotts's remaining contentions. One involves the instruction regarding policy. Because Wexford was a private corporation, Cotts needed to show that a policy adopted or condoned by Wexford caused him to receive constitutionally inadequate care. *See Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010). The written instructions told the jury:

> A corporation can only act through its officers and employees. Any act or omission of an officer or employee within the scope of his employment

and pursuant to the policies of the corporation
is the act or omission of the corporation.

Orally, the judge added: "Here in this case Wexford
Health Sources, Inc., the corporation, in order for
liability to be established against it, has to have a policy
that would be construed by you as resulting in delib-
erate indifference to a serious medical need."

The district court denied Cotts's request to instruct the
jury that a policy constitutes a "rule or regulation insti-
tuted by Wexford's directors" or a "decision or policy
statement made by Wexford's corporate officers,"
and Cotts maintains that the instructions as given im-
properly allowed the jury to believe Wexford could only
be found liable if its employees acted pursuant to a
*written* policy. The instructions did not specify that a
written policy was necessary to find Wexford liable.
Nonetheless, in formulating instructions on remand,
we invite the district court to consider cases such as
*Woodward v. Correctional Medical Services*, 368 F.3d 917,
928 (7th Cir. 2004), where we found evidence of an
actual practice, as opposed to a written policy, sufficient
to establish deliberate indifference.

Similarly, the district court can consider on remand
Cotts's requests for additional damages instructions
including a specific instruction telling the jury it could
consider "the physical, mental and emotional pain and
suffering" he experienced. (The jury was told it could
consider "[t]he pain and suffering endured by the plain-
tiff.") As the defendants' only response on appeal is
that the failure to give the instruction was harmless

because the jury did not reach the question of damages, and we are remanding for a new trial, the district court can consider the propriety of giving such an instruction on remand.

## III. CONCLUSION

The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 shall apply.