**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2016[*]
Decided April 14, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2210

| | |
|---|---|
| SHAWN M. BAHRS, <br>     *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Central District of Illinois. |
| *v.* | No. 13-2142 |
| THOMAS BAKER and WEXFORD <br> HEALTH SOURCES, INC., <br>     *Defendants-Appellees*. | Harold A. Baker, <br> *Judge*. |

**O R D E R**

Shawn Bahrs, an Illinois inmate suffering from Stage 4 colon cancer, brought this suit under 42 U.S.C. § 1983 against Thomas Baker, a prison doctor, and Wexford Health Sources, Inc., the healthcare provider at Western Illinois Correctional Center. Bahrs claimed that the defendants had acted with deliberate indifference in not diagnosing and treating his cancer sooner. A jury returned a verdict for the defendants, and the district court denied Bahrs's postjudgment motion arguing that inadequate

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

performance by his pro bono counsel warranted a new trial. Bahrs now appeals, challenging the denial of his postjudgment motion along with other evidentiary and procedural rulings. We reject his appellate claims and affirm the judgment in favor of the defendants.

At trial the parties differed about the conclusions to be drawn from the evidence, but for the most part the underlying facts were not disputed. Bahrs was assigned to the Western Illinois Correctional Center in the fall of 2011, and not long after he complained to a nurse about frequent diarrhea and abdominal pain. He was told that he would be scheduled to see a doctor, but his follow-up inquiries and even a grievance did not prompt action by infirmary staff. So it was not until four months after he reached the prison that Bahrs first saw Dr. Baker, a general practitioner.

During that first visit in January 2012, Bahrs reported that he had been diagnosed previously with irritable bowel syndrome. For a year, he said, he had been experiencing abdominal pain, multiple episodes of diarrhea each day, and occasional blood in his stools. Bahrs also told the doctor that he was experiencing bloating, gas, and pain from cramps. And he had lost seven pounds since entering the prison. Bahrs told Dr. Baker that his family had a history of prostate cancer but not colon cancer. Dr. Baker's physical examination did not reveal any abnormality except for an anal fissure, which he described at trial as a "crack in the skin." Dr. Baker concluded that the fissure was the likely source of the blood in Bahrs's stools. He ordered blood tests, screening for prostate cancer, and an abdominal X-ray. Dr. Baker testified at trial that Bahrs, who was 48 years old at the time of his first appointment, was not due to start regular colonoscopy screenings until age 50. Even so, after that first appointment he noted in Bahrs's chart that a colonoscopy might become necessary. He prescribed loperamide (marketed as Imodium) for the diarrhea and Tylenol for the abdominal pain.

When Bahrs returned two weeks later, Dr. Baker explained that the test results were mostly normal. The X-ray, he said, showed a significant amount of stool in the colon, but he did not think that was unusual. The blood test, however, had indicated anemia, so Dr. Baker ordered a repeat test. Bahrs reported that the loperamide had eased his diarrhea but the cramping continued. Bahrs also said that he no longer saw blood in his stools, which was confirmed by another laboratory test. Dr. Baker examined Bahrs's rectum and saw that the fissure had healed, supporting his theory that the fissure was the source of the blood. Dr. Baker renewed the prescription for loperamide, scheduled a follow-up appointment, and ordered the nursing staff to

monitor Bahrs's weight over the next month. He again noted in Bahrs's chart that a colonoscopy might be needed.

Bahrs had expected to see Dr. Baker for the follow-up in March 2012, but he met instead with a nurse practitioner. Bahrs reported that his diarrhea had been less frequent since the last visit. His weight remained stable. His energy level still was low, though he was able to play soccer. Afterward, two more appointments with Dr. Baker were scheduled—for two and three weeks later—but both were cancelled without explanation.

Meanwhile, the grievance that Bahrs had filed before his first visit with Dr. Baker finally was addressed by the doctor. Dr. Baker responded in writing that he had seen Bahrs twice after the grievance was filed, in January and February 2012, and that several tests had been performed initially. He noted the possible diagnosis of irritable bowel syndrome and the positive effect of the loperamide. He added that more tests had been ordered after results showed that Bahrs was anemic.

Bahrs saw Dr. Baker for the third time on April 2, 2012. Bahrs still reported diarrhea and cramping, but the fissure had not reappeared, and there was no evidence of blood in Bahrs's stools. After Bahrs asked whether a parasite or bacteria could be causing his diarrhea, Dr. Baker ordered additional tests and prescribed antibiotics. Dr. Baker also prescribed dicyclomine to relieve the cramping and scheduled another appointment for the following month. At trial Dr. Baker testified that, so far while treating Bahrs, he had not observed anything causing him to suspect cancer. He explained that Bahrs's diarrhea had appeared to improve with medication, his vital signs and weight were stable, and he had not reported a family history of colon cancer.

Bahrs returned to Dr. Baker for the fourth time on May 2. He still reported experiencing diarrhea three times a day and frequent cramping, so Dr. Baker decided that it was time to involve a gastroenterologist to assess the need for a colonoscopy. Dr. Baker requested that Wexford's utilization management team approve the referral but on the paperwork characterized the need for the outside specialist as not "urgent." A Wexford committee approved that request but suggested admitting Bahrs to the infirmary for a few days to monitor his diarrhea. For two days Bahrs stayed at the infirmary while nurses tracked the nature and frequency of his bowel movements. He told Dr. Baker that he felt as if something was lodged in his bowel. On May 9, one week after submitting the referral request, Dr. Baker received approval from Wexford for the outside consultation. He scheduled the appointment for June 29, which, he said at trial, was the date offered by the gastroenterologist's office.

After examining Bahrs on June 29, the gastroenterologist opined that a colonoscopy was needed. Dr. Baker concurred and four days later asked Wexford for approval, which was given a week later. The gastroenterologist, Dr. Baker testified, did not specify when to schedule the colonoscopy or suggest that Bahrs's situation was an emergency, and when he called to schedule the appointment, the gastroenterologist's office offered a date in August 2012. Dr. Baker saw Bahrs three times during July and assured him that a colonoscopy had been scheduled. At the last minute, however, the appointment was pushed back a week because, Bahrs says, the medical staff had not properly prepared him for the procedure.

On August 31, 2012, the gastroenterologist performed the colonoscopy and discovered a softball-sized tumor in Bahrs's colon. The gastroenterologist recommended a biopsy and surgery to remove the tumor because it was causing blockage. Two weeks later, on September 14, the biopsy results revealed that the mass was cancerous. Dr. Baker then submitted an urgent request to Wexford for an oncology referral, which was approved the same day. The oncologist examined Bahrs on September 20, performing a CT scan and recommending surgery to remove the mass. Dr. Baker approved that recommendation the following day.

A surgeon examined Bahrs one week later, on September 26, and recommended immediate surgery to relieve the blockage in Bahrs's colon. That procedure was performed the same day after Dr. Baker obtained emergency approval. The tumor was removed a week later, and because of complications a third surgery followed to remove Bahrs's spleen and part of his colon. When Bahrs returned to the prison on October 24, Dr. Baker referred him for a follow-up appointment with the oncologist, who in December 2012 diagnosed Bahrs with Stage 2 high-risk colon cancer and recommended six months of chemotherapy.

In June 2013, around the time that Bahrs completed his chemotherapy, he brought this suit claiming deliberate indifference against Dr. Baker and Wexford. Dr. Baker, he theorized, should have ordered a colonoscopy after the X-ray in January 2012 revealed a large amount of stool in his colon. Instead Dr. Baker waited until May to order the colonoscopy, which did not occur until the end of August. Moreover, Bahrs asserted, Dr. Baker had aggravated his condition by prescribing loperamide, which caused Bahrs's stools to harden and lodge in his colon, requiring surgery to remove parts of his colon and spleen. Bahrs included no specific allegations in his complaint

about Wexford other than the role the company played in approving Dr. Baker's requests for outside medical treatment.[1]

The district court recruited counsel to represent Bahrs, and the case proceeded to trial in April 2015. Dr. Baker and Bahrs were the only witnesses. Dr. Baker testified that from the very first appointment he took seriously Bahrs's complaints of diarrhea and abdominal pain. He did not simply accept Bahrs's prior diagnosis of irritable bowel syndrome, he said, instead running tests to look for other causes. But, Dr. Baker explained, Bahrs had not reported a family history of colon cancer. Moreover, the doctor said, he had not seen any sign of cancer. The loperamide had improved Bahrs's diarrhea, and no more blood was detected in his stools after the rectal fissure had healed. Nevertheless, Dr. Baker continued, he decided in May 2012 to refer Bahrs to a gastroenterologist. From that point, Dr. Baker testified, any delay in scheduling the colonoscopy was attributable to the gastroenterology office.

After the jury found for the defendants, Bahrs's lawyer withdrew. Bahrs then filed a pro se motion for a new trial arguing that counsel had been deficient in not calling expert witnesses. The district court denied the motion in a minute entry, reasoning that the Constitution does not guarantee effective representation in civil litigation.

Bahrs raises three arguments on appeal, but none is persuasive. First, he repeats the contention from his postjudgment motion that counsel was deficient in not calling experts to testify that Dr. Baker should have known sooner of the substantial risk of colon cancer. Bahrs notes that he even supplied counsel with the names of the gastroenterologist and surgeon who treated him but, he asserts, the lawyer never contacted them. Bahrs has attached to his appellate brief an affidavit from his sister, in which she tells us that after the trial she learned from Bahrs's surgeon that he would have testified on the plaintiff's behalf but was never contacted by the lawyer. But even if Bahrs's lawyer never contacted the doctors, the district court correctly recognized that the performance of Bahrs's lawyer was not a ground for a new trial because Bahrs lacked a constitutional or statutory right to effective counsel in this civil case. *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011); *Cavoto v. Hayes*, 634 F.3d 921, 924 (7th Cir. 2011); *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001).

---

[1] In his complaint Bahrs noted that he also had filed a malpractice suit in state court against a doctor and nurse who had treated him at a county jail. Bahrs did not assert any state-law claims in this litigation.

Bahrs next argues, for the first time on appeal, that the district court improperly instructed the jury by suggesting that he must prove that the defendants *knew* he had colon cancer, rather than the lesser showing that they knew of a *substantial risk* of colon cancer. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). Bahrs takes issue with the following jury instruction: "Plaintiff claims that the defendants … have been deliberately indifferent to the plaintiff's serious medical need for treatment of his colon cancer." He says this instruction—along with defense counsel's statements during closing argument that the jury must find that Dr. Baker "actually [knew] in his heart of hearts [that] the Plaintiff had cancer or a substantial risk of cancer," and "he's got to actually know that the plaintiff had cancer"—misled the jury.

Bahrs's lawyer did not object to any jury instruction in the district court, so we review the challenged instruction for plain error. *See* FED. R. CIV. P. 51(d)(2); *Higbee v. Sentry Ins. Co.*, 440 F.3d 408, 409 (7th Cir. 2006). But there is no error here. The court's instruction does not imply that the defendants must have known that Bahrs had cancer, and the instruction is almost a direct quote from the court's final pretrial order, which both parties approved in advance. Moreover, any ambiguity would have been resolved by the court's instruction on deliberate indifference, which tracks the language of our pattern jury instructions: "When I use the term 'deliberately indifferent,' I mean that the defendants actually knew of a substantial risk of serious harm and that the defendants consciously disregarded this risk by failing to take reasonable measures to deal with it." *See Pattern Civil Jury Instructions of the Seventh Circuit* 7.14 (2015); *Francis v. Franklin*, 471 U.S. 307, 318–19 (1985) (explaining that challenged jury instruction must be read in context with other instructions); *Cotts v. Osafo*, 692 F.3d 564, 568 (7th Cir. 2012) ("Sometimes other jury instructions can explain with sufficient clarity any ambiguity in a challenged instruction."). And although during closing argument opposing counsel incorrectly stated that the defendants had "to actually know that the plaintiff had cancer," the lawyer also acknowledged several times that knowledge and disregard of a substantial risk would suffice to establish liability. Counsel's misstatement likely carried less weight than the district court's subsequent instructions to the jury on the proper burden of proof and thus does not warrant a new trial. *See Boyde v. California*, 494 U.S. 370, 384–85 (1990) (noting that "arguments of counsel generally carry less weight with a jury than do instructions from the court"); *Sanchez v. City of Chicago*, 700 F.3d 919, 929 (7th Cir. 2012) (same).

Finally, Bahrs argues that the district court abused its discretion in excluding from evidence the grievance he filed complaining about the delay in scheduling his first

appointment with Dr. Baker. During Bahrs's direct examination his lawyer attempted to introduce the grievance into evidence so that Bahrs could read it to the jury. The defendants objected on the ground that the grievance was inadmissible hearsay and also irrelevant. The district court then asked Bahrs's lawyer why Bahrs could not just testify about the contents of the grievance rather than reading it, and the lawyer responded that he did not "have a problem with … that." Counsel thus withdrew his request to introduce the grievance, and the court never ruled on its admissibility. Without a ruling, we have nothing to review. And, anyway, it is unclear how the grievance would have been relevant to showing that Dr. Baker had delayed Bahrs's care. Dr. Baker testified that he did not recall this particular grievance, and the form itself does not show that he knew about the grievance before answering it. That Dr. Baker answered the grievance three months after Bahrs submitted it does not show that the defendant knew about the grievance as soon as it was filed.

For the foregoing reasons, we AFFIRM the judgment of the district court.