In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-2617

JASON WELLS,

*Plaintiff-Appellant,*

*v.*

ANGELA CAUDILL,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 14-cv-4048 — **Sara Darrow**, *Chief Judge.*

ARGUED APRIL 28, 2020 — DECIDED JULY 22, 2020

Before EASTERBROOK, RIPPLE, and SCUDDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Jason Wells was sentenced in Illinois for two drug offenses: he received two years' imprisonment for the first and one year for the second, to run consecutively. The sentencing judge gave him credit for pretrial detention: 255 days for the first sentence and 97 days for the second. Wells and the Illinois Department of Corrections promptly disagreed about how much time he needed to spend in prison.

Wells calculated his term as three years (1095 days) less 255 days less 97 days, for a total of 743 days. The prison system calculated 1095 less 255, for a total of 840. It disregarded the 97-day credit because it believed that, after his arrest for the second offense (which he committed while on bail from the first), Wells had been in custody on both charges simultaneously. The Department understands Illinois law to allow only the greatest of multiple credits to be applied when a person is in pretrial detention on multiple charges at the same time. See *People v. Latona*, 184 Ill. 2d 260, 271–72 (1998). Wells filed grievances, which were reviewed by several persons, including Angela Caudill, the Records Office Supervisor at East Moline Correctional Center. Although Wells did not articulate a legal position, the best would have been that he served sequential periods of pretrial detention (arrest, detention, release, rearrest, more detention), so that both credits should be applied even though he was in custody on two charges during the second period. But Caudill agreed with the calculation performed by one of her subordinates and initialed the worksheet. Wells was held until the expiration of the 840-day term (less good-time credits).

After his release, Wells filed this suit under 42 U.S.C. §1983, contending that Caudill and two other state employees violated the Cruel and Unusual Punishments Clause of the Eighth Amendment (applied to the states through the Fourteenth) by omitting the 97-day credit when determining his release date. The district court granted summary judgment to two of the defendants, ruling that they were not responsible for the calculation, and Wells has abandoned any claim against them. (Their names have been removed from the caption.) But the judge stated that the claim against Caudill required a trial to resolve two issues: who was right

about the length of Wells's sentences, and whether Caudill acted with the mental state required to violate the Eighth Amendment. The parties agreed to a bench trial, which was brief. Wells explained on the stand that he thought the prison system's calculation mistaken, presented the state judges' orders as evidence, and rested. The trial spans only 14 pages of transcript.

In response to a motion for judgment under Fed. R. Civ. P. 52(c), the judge ruled in Caudill's favor. She gave two reasons. First, Wells had not shown that Caudill is responsible; indeed, Wells had not mentioned Caudill's name. Second, Wells had not tried to show that Caudill acted with the state of mind necessary for a violation of the Eighth Amendment. All the evidence showed, the judge thought, was a possible error. The judge did not decide whether there had been an error; that issue dropped out given the other rulings.

Wells represented himself throughout the proceedings in district court. At our request, counsel stepped in to represent him on appeal. One of counsel's arguments is that the district judge should have done the same. A lawyer would have presented a stronger case, not only pinning down Caudill's role but also presenting evidence (from Caudill herself or from an expert) about her mental state.

Although it is tempting to order a rerun with the aid of counsel, Wells bears responsibility for his lack of counsel. Judicial assistance in lining up a lawyer can be appropriate when the market for legal services has overlooked a case where counsel can make a dispositive difference, but first the would-be plaintiff must try to hire someone. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Wells was out of prison when he filed this suit and could have approached

members of the bar. But when asked in 2014 whether he had sought legal assistance, Wells replied that he had not. When he applied for judicial aid again in 2018, he did not tell the court that he had sought a lawyer, without success, in the interim. True, the judge did not ask for that information in 2018, but our decisions establish that the answer matters. It follows that he was not entitled to judicial assistance in obtaining counsel. The district judge did not abuse her discretion by leaving him to fend for himself at trial.

To simplify the analysis, we shall assume that the first of the district court's two reasons for ruling against Wells was mistaken. He may not have done anything at trial to show that Caudill bore responsibility, but she does not deny making (or approving) the calculation that excluded the 97 days. The critical document, which is in the record from the summary-judgment proceedings, bears her initials. And Wells testified that he spoke about the calculation with "the head of the record office"—which is to say, Caudill.

Proving her state of mind, however, was a vital step on any path to liability. Whether the claim is framed under the Cruel and Unusual Punishments Clause or the Due Process Clause, simple error, negligence, or even gross negligence is not enough. See, e.g., *Farmer v. Brennan*, 511 U.S. 825 (1994) (standard under the Cruel and Unusual Punishments Clause is intent to injure, which can be proxied by deliberate indifference to a known serious risk of injury); *Daniels v. Williams*, 474 U.S. 327 (1986) (negligence does not support liability under the Due Process Clause). Yet at trial Wells proceeded as if the only question were whether Caudill miscalculated his release date as a matter of Illinois law.

Wells testified that he "was told [presumably by Caudill] that they could do what they want in the State of Illinois and East Moline Correctional Center." His appellate lawyer contends that this shows Caudill's intent to defy the state judiciary. Maybe a trier of fact could have drawn that inference, but in this bench trial the judge did not. The competing understanding is that Caudill tried to let Wells know that, after judges pronounce sentences and credit times, officials in the state's executive branch must put the numbers together to yield a total time in prison. That Caudill did her job by determining a release date does not bespeak an intent to punish Wells excessively.

Wells received a sentence calculation early in his term. He protested within the Department of Corrections' hierarchy, but he did not take the next logical step: asking a state court to determine the proper release date. Instead he waited until after he had been released and sued for damages in federal court. Because Illinois makes its judiciary available to resolve disputes about when sentences end, see *People v. Williams*, 239 Ill. 2d 503 (2011), it is hard to see why we should read federal law to expose state officials to damages if a federal court, in retrospect, concludes that they have made errors of state law.

Putting the point that way exposes one of the parties' mutual assumptions: that the Eighth Amendment permits a federal court to resolve disputes of state law that affect sentence length. Although the Supreme Court has never held that keeping a person in prison beyond the end of his term violates the Eighth Amendment, this circuit has reached that conclusion when the proper length is uncontested. The first case to do so was *Campbell v. Peters*, 256 F.3d 695, 700 (7th

Cir. 2001), and there have been several similar decisions since. See, e.g., *Burke v. Johnston*, 452 F.3d 665 (7th Cir. 2006), in which the prisoner obtained a decision from a state judge specifying the end of his sentence, only to have that order ignored by the prison. We know of just one decision in which the proper date of release was contested as a matter of state law—and in that case, *Armato v. Grounds*, 766 F.3d 713 (7th Cir. 2014), as in this, the litigants simply assumed that the federal court can use an error of state law as the basis of an award of damages under the Eighth Amendment. The court resolved the appeal as the parties had presented it, see *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020), but this does not turn the parties' assumption into a holding.

As in *Sineneng-Smith* and *Armato*, it is not our job to re-cast the parties' arguments, but it remains appropriate to identify assumptions that may need attention in future suits. For one of the best-established propositions in federal constitutional law is that an error of state law is not properly recti-fied by deeming that error a constitutional tort. See, e.g., *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Davis v. Scherer*, 468 U.S. 183, 193–96 (1984); *Nordlinger v. Hahn*, 505 U.S. 1, 16 n.8 (1992); *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir. 1988) (en banc); *Tucker v. Chicago*, 907 F.3d 487, 494–95 (7th Cir. 2018). If while in prison Wells had sought relief from a fed-eral court on the ground that state officials had miscalculat-ed his sentences' ending date, he would have been told to go to state court, for federal collateral relief cannot be used to fix errors of state law. See, e.g., *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (collecting many other decisions). Why should the federal role be greater if the prisoner serves out his sentence and then seeks damages?

The parties have overlooked a second potential issue too. *Heck v. Humphrey*, 512 U.S. 477 (1994), holds that a federal court may not award damages under §1983 when that calls into question the validity of a state conviction. *Edwards v. Balisok*, 520 U.S. 641 (1997), extends that rule to state procedures that determine the length of the sentence (as by granting or revoking good-time credits). This court recently held that *Heck*'s bar continues even after a prisoner has been released. See *Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (en banc). Unless a pardon or a state court sets aside the conviction or decision about time in prison, damages under §1983 are unavailable. This could be understood to mean that someone in Wells's position needs to obtain a ruling from a state court establishing his proper release date.

We mention these subjects, not to decide them, but to make clear that we have not decided them in passing. They are open for consideration in some future case. We have resolved this case as the litigants presented it. Because the district judge did not make a clearly erroneous finding when concluding that Wells had not shown that Caudill acted with the necessary state of mind, the judgment is

AFFIRMED.

RIPPLE, *Circuit Judge*, dissenting. At a bench trial, after Mr. Wells had presented his evidence, Ms. Caudill, rather than presenting her case, moved for an entry of judgment under Rule 52(c). In support of her motion, she submitted that Mr. Wells had not presented sufficient evidence either that his sentence was improperly calculated or that she acted with deliberate indifference.[1] The court granted Ms. Caudill's motion.

Federal Rule of Civil Procedure 52(c) states that:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

In ruling on the Rule 52(c) motion, the district court pointedly noted that it was *not* ruling on whether Ms. Caudill had made a mistake in calculating Mr. Wells's release date.[2] Indeed, the court noted in passing that there was at least a reasonable inference that the underlying state sentences were not served simultaneously.[3] The court very deliberately lim-

---

[1] R.72 at 16.

[2] *See id.* at 18–20.

[3] *Id.* at 18–19.

ited its ruling to the following: 1) there was no evidence as to who was responsible for the error; 2) there was no evidence of deliberate indifference to Mr. Wells's being held beyond his correct release date; and 3) there was no proof of damages.[4] In my view, the district court was wrong on each of these points. On this record, none of these articulated bases can support the district court's judgment. Indeed, these missteps indicate such a cursory examination of the record as to undermine any confidence in the court's conclusion.

First, the court's earlier ruling on a motion for summary judgment left absolutely no doubt about the identity of the state actor in this case. Indeed, both parties, and the district court, agreed that the identity of the state actor was no longer contested; the state actor was the remaining defendant, Ms. Caudill. The district court again made its position clear when it granted partial summary judgment and took the other named defendants out of the case because there was no evidence that they had made the sentence calculation.[5] The district court again made clear the identity of the state actor when it delineated the issues left for trial: 1) "whether [Mr. Wells's] periods of pretrial detention were nonsimulta-

[4] *Id.* at 18–20.

[5] *See* R.42 at 8. In their motion for summary judgment, the defendants contended that, "Defendants Van Wolvelaere and Erno are entitled to summary judgment because neither Defendant was personally involved in the calculation of Plaintiff's sentence … ." R.34 at 2. Notably, the defendants did not similarly contend that lack of personal involvement was a ground for granting Ms. Caudill summary judgment. *See id.* (stating only that, "Defendant Caudill is entitled to summary judgment because she properly calculated Plaintiff's sentence and therefore could not have acted deliberately indifferent").

neous"; and 2) "whether Defendant Caudill 'understood' that she was allegedly violating [Mr. Wells's] right[s] when she approved [Mr. Wells's] sentence calculations and challenged his grievance."[6]

Ms. Caudill candidly admitted her potential liability. At summary judgment, she submitted an affidavit conceding that her job was to ensure that offenders' sentences were calculated correctly. She acknowledged that her initials on the worksheet used to calculate Mr. Wells's sentence indicated that she had reviewed and confirmed the accuracy of his sentence.[7] She also admitted that she had responded to Mr. Wells's grievances by informing him that he was not entitled to get the 97 days of credit.[8]

In her proposed pretrial order, Ms. Caudill did not contest her responsibility for the sentence calculation. In the final pretrial order, the parties' contested issues of fact *did not* include whether Ms. Caudill was the responsible party but *did* include "[w]hether or not the defendant, Angela Caudill, was aware of an inaccuracy within the sentencing documentation of Mr. Wells that would affect the length of his incarceration."[9] The court, in its summary judgment order, stated, "[i]t remains a question of fact whether Defendant Caudill 'understood' that she was allegedly violating that right *when she approved Plaintiff's sentence calculations and challenged his*

---

[6] R.42 at 7, 9.

[7] R.34-10 ¶¶ 2, 26–27.

[8] *Id.* ¶¶ 28–30.

[9] R.57 at 2.

*grievance*."[10] Indeed, in her opening statement at trial, she conceded that she was responsible for the sentence calculation.[11]

Turning to the district court's second articulated reason for granting judgment under Rule 52(c), the record does not support the district court's conclusion that Mr. Wells had submitted no evidence of deliberate indifference. Mr. Wells testified that when he spoke with Ms. Caudill about the sentence calculation, she told him that, despite the state court's ruling, "they could do what they want to do in [the] State of Illinois and [at] East Moline Correctional Center."[12] The district court did not evaluate this evidence, as it had a right to do. It simply said, in summary fashion, that there was no evidence to evaluate. Certainly, the court could have chosen not to believe Mr. Wells's version of events. However, nowhere in the Rule 52(c) findings is there any suggestion that the district court made a credibility determination. It simply failed to acknowledge Mr. Wells's evidence, which it could not do.

Mr. Wells's encounter with Ms. Caudill was the heart of his case. The district court either believed him or it did not. It either characterized his evidence as evincing the requisite intent to constitute an Eighth Amendment violation or it did not. But it could not ignore the evidence.

---

[10] R.42 at 9 (emphasis added).

[11] R.72 at 9 ("Ms. Caudill … calculated his sentence based on the understanding she had of the court's orders.").

[12] *Id.* at 11.

The district court also took the view that Mr. Wells had to prove specific damages as part of his case on liability. The case law clearly establishes that such proof is not an element of the cause of action. "Damages are not an element of liability in a deliberate indifference claim." *Cotts v. Osafo*, 692 F.3d 564, 569 (7th Cir. 2012); *see also Calhoun v. DeTella*, 319 F.3d 936, 941–42 (7th Cir. 2003) (explaining the availability of nominal damages for Eighth Amendment violations). Whether there is liability and whether there are damages are two separate inquiries, "with the liability inquiry [being] the threshold one." *Cotts*, 692 F.3d at 569.

The district court simply did not give adequate attention to the merits of the case before it when it ruled on the Rule 52(c) motion. Its ruling on each of the points before it was either clearly erroneous or legally infirm. The motion should not have been granted.

Finally, the panel majority supplements its discussion of the issues necessarily raised by this case with a discussion of issues that, in its view, ought to be raised in cases such as this. This discourse is, of course, *dicta*. Even a cursory reading of this summary sketch raises serious questions about the suitability of such doctrinal developments. Such doctrinal changes would have a very significant impact on existing law and on the delicate framework of federal-state relations. Perhaps we should be careful about what we ask for.[13] Stating precipitously a future jurisprudential agenda without the assistance of briefing and oral argument is beyond the institutional capacity of the judiciary.

---

[13] *See, e.g.*, Colin F. Powell, My American Journey, Appendix: Colin Powell's Rules (5. "Be careful what you choose. You may get it.").

The district court presided over this case with significant equanimity. Although I believe that the district court gave short shrift to several crucial aspects of this case, it also demonstrated, at times, considerable concern for the plaintiff's understanding of the proceedings. There is not a whisper of an echo of partiality. Yet, despite the court's efforts in that respect, the case also demonstrates some of the recurring problems that we see in pro se litigation: the lack of early attention to the possibility of a litigant becoming, as Justice Harlan liked to say, "tanglefoot"[14] and precipitous decision-making before the record tells the full story. If the courts are to retain the public trust, we must do better.

I would vacate the judgment of the district court and remand for further proceedings.

---

[14] *See, e.g.,* John M. Harlan, What Part Does the Oral Argument Play in the Conduct of an Appeal, 41 Cornell L. Rev. 6, at 8 (1955).